



FILED

Jul 09 2020, 11:51 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CT-109

## Tammi Clark, as personal representative of the Estate of Kandace Pyles, deceased,

*Appellant/Plaintiff,*

—v—

## Samer Mattar, M.D.,

*Appellee/Defendant.*

---

Argued: May 14, 2020 | Decided: July 9, 2020

Appeal from the Marion Superior Court
No. 49D11-1601-CT-3080
The Honorable John Hanley, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CT-380

---

### Opinion by Justice David

Chief Justice Rush and Justice Goff concur.
Justice Massa concurs in part and dissents in part with separate opinion.
Justice Slaughter dissents with separate opinion.

**David, Justice.**

At issue in this case is whether a juror should have been struck for cause based on bias, necessitating a new trial where the juror stated he did not want to serve as a juror, had a favorable impression of doctors, stated repeatedly that he could not and would not be able to assess noneconomic damages and absolutely no rehabilitation with regard to the damages issue occurred. Under the facts and circumstances of this case, we find that the juror should have been struck for cause and that there was prejudice because the party objecting to the juror was forced to exhaust her last peremptory challenge and accept an objectionable juror. Therefore, a new trial is appropriate.

## Facts and Procedural History

Kandace Pyles died following complications as a result of her bariatric surgery. Her estate brought a negligence claim against various medical providers involved including Dr. Mattar. (The others were dismissed prior to trial.) The medical review panel issued a unanimous opinion concluding that Dr. Mattar failed to comply with the appropriate standard of care and that this conduct was a factor of the resultant damages.

During trial, issues arose with one of the prospective jurors, Dennis Miller. That is, Miller indicated repeatedly that he did not want to serve as a juror and further, that he didn't think he should have to or would be able to put a dollar amount to non-economic damages. Specifically, the following exchange occurred:

> [Miller]: So, we have to determine the dollar amount?
>
> [Clark's Trial Counsel]: Yes, sir. Assuming there is liability, you would have to determine the dollar amount.
>
> [Miller]: I don't know if I want any part of that.
>
> [Clark's Trial Counsel]: Okay. I'm going to explain. I appreciate your candor. Tell me why you are feeling that way.

[Miller]: I'm just not sure. I just—I don't think it's my responsibility to determine the dollar amount.

[Clark's Trial Counsel]: Okay. So, let me ask this. The Judge is going to give you instructions, and assuming that you found liability, and you were satisfied by the preponderance of the evidence that there was liability for this, you are also going to have to decide damages. Are you telling me that you don't feel that you could fulfill your duty on that second part of this?

[Miller]: I want no part of it.

[Clark's Trial Counsel]: Okay, and why?

[Miller]: I just don't feel it is right. I don't think I should have to do that.

[Clark's Trial Counsel]: Okay. Would you be able to take your oath as a juror on that?

[Miller]: Well, I'm telling you the truth now.

[Clark's Trial Counsel]: Okay. No, I understand that. The reason I'm asking you is, as the Judge said, you know, getting rid of somebody as a juror for cause requires a very heavy burden. So, I'm asking you, if the Judge asked or the other attorney asked you, are you telling me that you can't sit on a case where you are going to be asked to render a verdict—

[Miller]: —Based on that question I have to say, no, I can't.

Tr. Vol. II at 17–18. And then:

[Miller]: Are you asking the same question again?

[Clark's Trial Counsel]: Well, kind of. I mean, I know, I got your view. I take it that you just don't want to have anything to do with—

[Miller]: —As far as whether he performed malpractice or

not, I can do that. But the money part—no.

*Id.* at 22.

Clark moved to strike Miller for cause, and the trial court denied the motion, finding that Miller was not biased against any particular party, but rather that Miller was looking for a reason not to serve on the jury. Clark preserved her objection for appeal and used her final peremptory challenge on Miller. When asked who Clark would have stricken if not for having to use the last peremptory on Miller, she identified Juror 3.

The trial proceeded and the jury found that Dr. Mattar was not negligent. Clark appealed. Our Court of Appeals reversed and remanded for a new trial. *Clark v. Mattar*, 133 N.E.3d 220, 225 (Ind. Ct. App. 2019). It found that Clark had established that the trial court abused its discretion in denying her motion to strike Miller for cause because he was biased against anyone seeking damages and further, that Clark demonstrated prejudice by having to select an objectionable juror. *Id.* Dr. Mattar sought transfer which we granted. Ind. Appellate Rule 58(A).

## Standard of Review

A trial court has discretion to grant or deny juror challenges for cause, and its decision should be sustained on appeal "unless it is illogical or arbitrary." *Merritt v. Evansville-Vanderburgh School Corp.*, 765 N.E.2d 1232, 1235 (Ind. 2002).

## Discussion and Decision

At issue is whether the trial court acted illogically or arbitrarily in denying Clark's for-cause challenge to juror Miller. Jury Rule 17 provides, in relevant part, that "[t]he court shall sustain a challenge for cause if the prospective juror … is biased or prejudiced for or against a party to the case[.]" Ind. Jury Rule 17(a)(8). However, a prospective juror may be "rehabilitated" through questioning that elicits whether the juror could set

aside personal biases, beliefs, and prejudices and follow instructions as given. Ind. Trial Rule 47(D).

Here, the trial court found no bias. It determined that based on Miller's responses to voir dire and his jury questionnaire, he was just an unwilling juror. Explaining the denial of Clark's for-cause challenge to Miller, the trial court stated:

> It's worth noting that in response to the juror questionnaire that Mr. Miller submitted in addition to the fact that he said during voir dire that he had been a—that he had served on 6 criminal court juries over the span of some years. In his response … on the back of the questionnaire, please provide any additional information the court and the attorneys should know about you: I do not want to serve. That is what he wrote. So … my interpretation of that would be is he was looking for a reason not to serve and so he isn't. Your objection is overruled.

Tr. Vol. II at 41.

The trial court further stated:

> If you want to make a record, you can make a record but under Rule 17 of the Indiana Supreme Court[']s Jury Rules it is not cause. He doesn't meet the qualifications for a challenge for cause. He is not disqualified under Rule 5. He hasn't served as a juror in the same county within the previous 365 days. He is not unable to comprehend the evidence and instructions. He hasn't formed or expressed an opinion about the outcome of the case. He is not a member of a jury [that] previously considered this. He is not related to any of the parties, attorney[s] or witnesses. He doesn't have a personal interest in the result of the trial. He isn't biased or prejudiced against a party and he has not [been] subpoenaed as a witness. So, it is not cause. It is not cause.

Tr. Vol. II at 36-37.

Clark believes there was bias here, where Miller stated he could not put a dollar amount to economic damages—something he would have to do in order to assess damages for a plaintiff such as Clark. Dr. Mattar, for her part, argues that this is not bias and as such the trial court did not err in denying a for cause challenge. Clark responds that Miller was either biased or lying to evade jury service and in either case, justice requires he be removed for cause. We agree with Clark that Miller should have been stricken for cause, albeit for slightly different reasons which we will discuss herein.

**Jury Rule 17 and the "reluctant" juror**

Indiana's appellate courts have not specifically addressed the issue of the "reluctant juror" in the context of a challenge for bias under Jury Rule 17(a)(8). However, our Court of Appeals has previously upheld the use of peremptory strikes (not for-cause ones) to strike these types of jurors. *See, e.g., Wallick v. Inman*, 130 N.E.3d 643, 652-53 (Ind. Ct. App. 2019), *trans. not sought* (affirming denial of for-cause challenges to juror who testified that he "hated court," was not fond of doctors and lawyers, and would find it difficult to pay attention); *Barnett v. State*, 637 N.E.2d 826, 830-31 (Ind. Ct. App. 1994), *trans. not sought* (affirming the peremptory strike of a juror who stated that she did not want to serve on the jury and was uncomfortable judging other people).

The Court of Appeals has developed additional case law upholding for-cause challenges when there is actual and specific bias that bears on the case. *See, e.g., Thompson v. Gerowitz*, 944 N.E.2d 1 (Ind. Ct. App. 2011), *trans. denied*, and *Fratter v. Rice*, 954 N.E.2d 497 (Ind. Ct. App. 2012), *trans. denied*. In *Thompson*, the Court of Appeals reversed and remanded for a new trial when a juror failed to disclose that she was "trying to go after a doctor for negligence" after her husband's recent death. 944 N.E.2d at 8-9. In *Fratter*, the Court of Appeals held that the trial court acted within its discretion by dismissing a seated juror who expressed that his experience with a missed diagnosis would make it difficult for him to be impartial in a malpractice case involving a similar set of circumstances. 954 N.E.2d at 503.

This particular case seems to fall somewhere outside of case law upholding use of peremptory strikes for reluctant jurors and cases where for-

cause challenges were appropriate to strike those jurors with a specific bias. On the one hand, Miller did not state he had some specific reason to be biased against Clark or for Dr. Mattar, and there's no evidence that he concealed any information about his feelings that would bear on the case. On the other, he stated on his juror questionnaire that he did not want to serve and during voir dire, he said he would have trouble putting a dollar amount to non-economic damages meaning that there's a bias against the party seeking those damages—here, Clark. Accordingly, we agree with our Court of Appeals that there is bias here. This is not to say that every unwilling or reluctant juror is biased as there are times these unwilling or reluctant jurors can be rehabilitated, but under these circumstances, Miller stated repeatedly and emphatically that he could not render a decision about noneconomic damages.

Further, rehabilitation of the juror did not occur here. That is, Miller stated "I want no part of it" when asked about assigning an amount to noneconomic damages and further, "no, I can't" when asked if he could sit on a jury tasked with rendering a verdict as to noneconomic damages. Tr. Vol. II at 17–18. Counsel then moved on, asking if any of the other jurors felt that way too. The trial court did not intervene. Perhaps with further questions by counsel or the court, Miller could have been rehabilitated, but he wasn't.

Because of the importance of a fair and impartial jury, we note that it is the joint responsibility of both counsel and the trial court to undertake some rehabilitation effort when an issue arises regarding whether a juror is fit to serve. Here, Miller indicated several times that he could not and would not be able to assess noneconomic damages but instead of counsel or the court asking further questions, the voir dire process continued with no rehabilitation effort. We think counsel and/or the court could have and should have done more. If counsel or the court choose not to make a rehabilitation attempt, that is their choice. However, if that occurs, we will only have the statements of the prospective juror to rely on for appellate review and we will not speculate about what the results of a rehabilitation attempt might have been.

Further, Miller made other statements during voir dire that indicate he may be biased against Clark and for Dr. Mattar. That is, Miller expressed that he had generally positive feelings about doctors, given his experience with his wife:

> [Miller]: I have a question. Now, I have a wife that has a lot of health issues [and] our experience with doctors [has] been very good. . .
>
> * * *
>
> [Clark's Trial Counsel]: Okay. Likewise, this is a case that involves medical malpractice. Is there anybody here, by virtue of the fact that this is a case that's going to call into question the conduct of a doctor that says, hey, I'm not too sure I want to serve on this kind of a case. Is there anybody that feels that way?
>
> [Miller]: I told you how I felt.
>
> [Clark's Trial Counsel]: No, no, no. So, would that – would this be difficult?
>
> [Miller]: It may. I guess, my wife, our experience with doctors has been very, very good.
>
> [Clark's Trial Counsel]: And I'm sure a lot of people have had good experiences. So, let me ask this. You know, just as I am not wanting any kind of sympathy on behalf of my client, would you be able to treat a doctor just like anybody else that was called into court?
>
> [Miller]: I'll try.
>
> [Clark's Trial Counsel]: Okay, let me ask it this way. When we start off, and the Judge talked to you a little bit about this, the

burden of proof, it's the greater weight of the evidence. Right now, the scales start off kind of even and [it] becomes our burden to put evidence over on this side. The other side gets to put counter evidence. We have to, ever so slightly, tip the scales. Right now, with what you are telling me, sir —

[Miller]: I understand what you are saying.

[Clark's Trial Counsel]: Are the scales level right now?

[Miller]: -They are level now.

[Clark's Trial Counsel]: . . .Would the fact that you have had these positive experiences in your background with doctors, would you let that tip the scales?

[Miller]: I don't think so. I don't know.

[Clark's Trial Counsel]: Okay. Well, no and you are the only one I can ask about it and that's why I'm asking the question.

[Miller]: Well, I – probably. I don't know. We'll see.

[Clark's Trial Counsel]: Okay. Well, and so let me just take it a little further and I appreciate your candor on this. Unfortunately, we'll have to make a decision now and that's why am asking the question. Nobody knows your - knows you better than yourself. So, as we start off right now, you're telling me that you think you are —

[Miller]: - I try to be as fair as I can to everybody. I try.

[Clark's Trial Counsel]: Okay.

[Miller]: It doesn't always come out that way but I try.

[Clark's Trial Counsel]: And so this is kind of where I was getting to was the idea of if you have anything in your background or bias that may be, in spite of your best efforts, you couldn't - you can't put aside. Do you feel like you've got something like that?

[Miller]: I don't know. I guess not.

Tr. Vol. II at 5-7.

Here counsel did make efforts to rehabilitate Miller with regard to his potential bias because of his positive feelings about doctors. Miller's statements about these feelings standing alone may not be enough to give rise to a valid for-cause challenge in light of Miller's assertion that he would try to be fair and that the scales were even. However, his responses were equivocal. When asked if he couldn't put his positive feeling aside, he responded: "I don't know. I guess not." *Id.* at 7.

Miller stated on the juror questionnaire that he did not want to serve. He made repeated, emphatic statements during voir dire about his inability and unwillingness to assess and award noneconomic damages for Clark. There was no rehabilitation effort about damages. He expressed uncertainty about whether his positive feelings for doctors would make him biased. All these things together demonstrate a potential bias against Clark necessitating Miller be struck for cause. The trial court's failure to do so was illogical under these particular circumstances.

**Prejudice pursuant to *Oswalt***

In *Oswalt v. State*, 19 N.E.3d 241, 248-49 (Ind. 2014), *reh'g denied*, this Court held that an erroneous denial of a for-cause motion to strike a juror is prejudicial when it requires a party to exhaust its peremptory challenges and accept an objectionable or incompetent juror. *See also Whiting v. State*, 969 N.E.2d 24, 30 (Ind. 2012); *Merritt*, 765 N.E.2d at 1235. Under the facts of *Oswalt*, this Court ultimately held that the trial court did *not* abuse its discretion in denying Oswalt's for-cause challenges to certain jurors and the issue there was whether Oswalt preserved appellate review of his motions to strike. Here, the circumstances are different and

necessitate a new trial because we find that the trial court should have granted the for-cause challenged to juror Miller, who, based on the record, was biased against Clark. Clark made a for-cause challenge and after the court denied such request, Clark appropriately made a record and identified which juror she would have struck (Juror 3) using her last remaining peremptory. Because Clark was forced to exhaust her peremptory challenges and accept an objectionable juror, granting a new trial is mandated by the bright-line rule in *Oswalt*.

Dr. Mattar is concerned about *Oswalt* giving a party an automatic right to a new trial and argues that in some circumstances this may be a disproportionate remedy. Here, Dr. Mattar points to the fact that the jury found her not negligent and thus, the jury never had to consider damages—the issue juror Miller would have struggled with. As such, she argues there is no prejudice. But as Clark points out, the fact that the jury didn't find Dr. Mattar negligent is beside the point because had she not had to use her peremptory on Miller and gotten to strike Juror 3 as she wished, that one juror certainly could have caused the entire jury to come to a different outcome. We agree with Clark that there is no way to speculate what impact a single different juror may have had here and there is no reason to do so.

Further, we made clear in *Oswalt* that the very fact that an objectionable juror serves is how a party is prejudiced. *Oswalt*, 19 N.E.3d at 249. We also made clear that the trial court retains great discretion in deciding whether a juror should be struck for cause. Indeed, in *Oswalt*, this Court found the trial court did not abuse its discretion in denying the for-cause challenge there and as such, a new trial was not granted. *Id*. at 250. Because of the deference we give to our trial court judges to make decisions about jurors, it is a rare circumstance that an appellate court will reverse and grant a new trial.

Here, because we find that the trial court's decision to deny Clark's for-cause challenge was illogical under the circumstances and that Clark was forced to exhaust her last peremptory on Miller instead of objectionable Juror 3, a new trial is appropriate.

# Conclusion

For the foregoing reasons, we reverse and remand for a new trial.

Rush, C.J. and Goff, J., concur.
Massa, J., concurs in part and dissents in part with separate opinion.
Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Richard A. Cook
Jamison J. Allen
Yosha Cook & Tisch
Indianapolis, Indiana

Stephen B. Caplin
Stephen B. Caplin Professional Corporation
Indianapolis, Indiana

Richard L. Schultheis
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA TRIAL LAWYERS ASSOCIATION

Sara A. Langer
Steven A. Langer
Langer and Langer
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Mary M. Ruth Feldhake
Sarah T. Parks
Bose McKinney & Evans, LLP
Indianapolis, Indiana

**Massa, J., concurring in part and dissenting in part.**

I concur in the Court's holding that the juror should have been stricken for cause. Where I part company is with the disproportionate remedy of a new trial where the biased juror never served.

I concurred only in result in *Oswalt v. State* because it did not order a new trial. 19 N.E.3d 241 (Ind. 2014). My concern then and now is that error by a trial court in failing to dismiss a juror for cause will always result in a new trial, so long as the moving lawyer subsequently uses all her peremptory strikes, then objects to the last juror seated without even giving a reason, saying (even disingenuously), "I would have used a peremptory on this juror but I'm all out." Under the analogous federal rule, the U.S. Supreme Court held, unanimously, a new trial is not appropriate. *See United States v. Martinez-Salazar*, 528 U.S. 304, 315–17 (2000) (holding that the exercise of peremptory challenges "**is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause**" because "choosing to remove [the juror] rather than taking his chances on appeal, defendant did not lose a peremptory challenge . . . [instead] he used [it] in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury") (emphasis added). Our departure from the federal rule potentially forces a crime victim to endure another trial—extracting too high a toll for a judge's mistake subsequently cured by a peremptory challenge. Consider the following scenario in a rape or murder case where it takes, say, two days to seat a jury:

> On Monday morning, the defense objects to Juror No. 1 for cause. The judge wrongly denies the motion. The lawyer uses a peremptory strike and the biased juror is not seated. The defendant is protected. By Tuesday afternoon, eleven jurors are seated, and the lawyer has one peremptory strike remaining. She uses it on the next juror up, and now she's all out. One juror still must be seated, and under *Oswalt*, if the lawyer merely says, "I would have struck the next one, too, but I'm all out," the Court of Appeals must order a new trial

because of the judge's error on Monday morning, without any prejudice shown and without any biased juror having actually served. Why would defense counsel not exhaust every peremptory challenge in every case where a judge has questionably denied a challenge for cause? The last juror seated could be exactly what defense counsel was looking for, but so long as she says, "I would have struck him," she has a new trial in her pocket if the judge was wrong about Juror No. 1.

If this be so, one might ask why make counsel prolong voir dire when it would be more efficient to simply order a new trial any time a judge is reversed on a for-cause challenge? Given the risk, why would a court ever deny a challenge for cause?

This landmine has not detonated in any criminal case to come to our attention since *Oswalt*. But it has gone off here in a civil matter. In time, it will work an injustice to a victim of crime and to the people writ large.

**Slaughter, J., dissenting.**

I respectfully dissent from the Court's opinion that the trial judge erred in denying the plaintiff's motion to strike a prospective juror for cause. The Court holds that denial of the motion was "illogical" because the juror's stated "inability and unwillingness to assess and award noneconomic damages for [the plaintiff] … demonstrate a potential bias against [the plaintiff] necessitating [that the juror] be struck for cause."

The standard of review here is key. Had the trial judge ruled the other way, finding that the prospective juror was biased and that Tammi Clark was entitled to a for-cause strike, I likewise would have deferred to that finding and held that the judge did not abuse his discretion. The fact is, the record contains evidence supporting either finding. There is, to be sure, evidence supporting what the Court concludes today—that the disputed juror was biased against Clark because of his unwillingness to consider an element of damages Clark was seeking. But that is not the only permissible inference from this record. An alternative inference is what the trial judge found, which is that the juror's statements that he could not render a verdict on noneconomic damages were pretextual because his true sentiment was that he did not want to be there. I cannot agree with the Court's conclusion today that it was "illogical" for the trial judge, who saw counsel's colloquy with the prospective juror first-hand, to rule as he did. Indeed, the juror's own questionnaire recited what the trial judge found, which is that he did not want to serve as a juror.

The Court's failure to give deference to that finding prompts a related concern. It threatens to upend the careful balance we struck in *Oswalt v. State*, 19 N.E.3d 241 (Ind. 2014)—the balance between, on the one hand, the generous (some say "disproportionate") remedy of a new trial for a jury-selection error and, on the other, a reviewing court's overwhelming deference to the trial court's "great discretion" when ruling on motions to strike prospective jurors for cause. To be clear, I do not necessarily object to our bright-line rule requiring a new trial for such errors. To the contrary, I tend to believe our case law would benefit from more bright-line rules, not fewer. But an essential complement to the extreme remedy of a new trial is to ensure that a reviewing court afford the trial judge

"substantial deference" by finding error "only if the decision is illogical or arbitrary." *Id*. at 245 (citation omitted). We afford trial judges broad discretion when considering these "strike-for-cause" requests because of the judges' "unique position to observe and assess the demeanor of prospective jurors as they answer the questions posed by counsel." *Id*. (cleaned up). Otherwise, without a deliberately high bar for finding reversible error, we face the real prospect of ordering new trials in myriad situations where the likely prejudice to the wronged party is doubtful—a prospect that would undermine *Oswalt*'s expressed interest in "judicial economy". *Id*. at 246, 248. Granting a new trial in such circumstances because of a jury-selection finding with which we disagree, despite our duty to afford "substantial deference" to such findings, with no showing of resulting prejudice, strikes me as highly uneconomic.

I respectfully dissent.